Case number 15-5216. Pamela Taylor, Appellant v. United States of America. Mr. Owinogay for the Appellant. Mr. Kelly for the Appellee. With money, you are not free. May it please the Court, Charles Owinogay on behalf of the Appellant. You know, the issue before the Court in this case is whether Officer Clark was privileged in the assault of Miss Pamela Taylor on March 17th of 2010. I will address the Court's finding as to the battery claim before dealing with the assault claim. With respect to the battery claim, the Court found that Miss Pamela Taylor was assaulted. The issue became whether Officer Clark was privileged in assaulting Miss Taylor. In doing that analysis, it should be viewed from the perspective of an objective officer at the scene based on the facts and circumstances confronting the officer. Based on the facts of the case and as found by the judge, when Officer Clark started interacting with Miss Pamela Taylor, the facts and circumstances confronting him were simple and limited. One, Miss Pamela Taylor was talking to another gentleman, an inmate. He was told by Officer Clark to stop talking. Based on the facts found by the judge, Miss Taylor did not stop. Apparently, in talking to Officer Clark, Miss Taylor told Officer Clark that he would not stop talking. And in doing that, apparently her hand, based on the findings, touched the face of the officer. There was no testimony that Miss Taylor attacked Officer Clark. There was no testimony that Miss Taylor hit Officer Clark. When that happened, when that incidental contact happened, Officer Clark held the wrist of Miss Taylor. There was no testimony that Miss Taylor was resisting arrest. There was no testimony that she engaged in any action. What did Officer Clark do? Officer Clark pushed down Miss Taylor's hand. If she was resisting arrest, or if Officer Taylor wanted to restrain Miss Taylor, when he was holding her hand, he could have done that. He could have restrained her at that point. He did not do that. What did Officer Clark do? He said, if your hand touches my face again, I'm going to put you to the ground. There was no testimony about any command that turned around, let's put the wrist restrained, or anything of that nature. Apparently, based on the facts found by the judge, Miss Taylor, in talking to Officer Clark, that she will not be put down. Her hand again, accidentally, if it's taken as proven, touched Officer Clark's face. Why do you say accidentally? Because the finding of fact on Joint Appendix 311, I guess it's paragraph 29, it's after Officer Clark said, well, he warned her to keep her hands out of his face, and then informed her that if she did not comply, he would place her on the ground. The finding of fact from the district court is that the plaintiff again raised her hands towards Officer Clark's face, hit his glasses, and stated, I'm not going to be quiet, and you're not going to place me on the ground. Okay. If you read the language of that finding, raised her hand, it wasn't said attacking or trying to hit. If you also go to the next line, I believe that will be paragraph... Well, the district court said, excuse me, hit his glasses. Yes, it said hit his glasses, but if you read the transcript, I don't believe the statement that it was hit. I believe it was touched, because immediately he grabbed her hand. It wasn't as if... So is your argument here that there was just clear error in the district court's fact findings, or that the district court erred in applying the law enforcement privilege? You know, both. There's clear error in the court's factual finding, and there's also error in the application of the facts to the law. Because given what was confronting Officer Clark, there was no basis to use that amount of force to do a leg sweep. What was confronting Officer Clark was a 110-pound, 5'1-inch lady, a young 21-year-old girl, and a 295-pound male. So just to set the factual context, so what he testified was, and this was at Joint Appendix 180, she attempted to strike my eyes, but my glasses were in the way. That sounds like it's not true that there's no testimony that there was an intentional effort to hit. It sounds like there was an effort, at least according to his testimony, which the district court then credits in its findings. She attempted to strike my eyes. This is at the top of page 180. But my glasses were in the way, and that's why she ended up hitting the glasses. So you were getting to the legal argument that given the circumstances, the use of force couldn't be justified. But just in terms of understanding the factual predicate against which we judge whether the use of force was justified, it's a circumstance in which there was an attempt to strike, and there was a hitting of the glasses. And then you might have an argument that notwithstanding that, as a matter of law, the nature of the response was excessive. Okay. I will draw the court's attention to Joint Appendix 200. Actually, what Officer Clark, at least paragraph 11, why Officer Clark put Ms. Pamela Clark to the floor. Remember, after the incident, Officer Clark wrote a report. There was nothing in the report about Ms. Pamela Clark touching his face. That only came up at trial as justification for putting her on the ground. But if the court reads Joint Appendix 200 from 11 to 16, it clearly shows that Officer Clark put Ms. Clark to the ground because she refused talking. If you read that, it's clear. The first time about touching his face, and even in the judge's opinion, the judge did refer to that fact. I will draw the court's attention to where Judge Kaye made mention that Officer Clark did not put in his report that he was hit in the face by Ms. Taylor. So it seems that there was some, you pointed to in your briefing, some conflicting evidence about whether there was contact made or whether the hands just came toward the face. And it seems that the thing that Judge Kaye's fact-finding emphasizes is that there was an advance toward or to the eyes, and that that's what he was reacting to. Okay. And it's difficult, given the testimony that is in the record, some of which refers to touching and other of which doesn't, it's difficult to conclude that it was clearly erroneous for Judge Kaye to make the fact-finding that Judge Hermansen pointed to. Okay. You know, even if that was not, okay, even if the court does not find it clearly erroneous, if we apply the fact to the law as to whether the officer was privileged in doing a leg sweep on a 110-pound female that had leg shackles on, it was clearly erroneous because he had two occasions to restrain her, but did not. The first time he held his hand, I mean, he held her hand, he did not restrain her. He did not even tell her to turn around, let me restrain you. Let me ask you, as I read the District of Columbia cases, it is a requirement for an officer to be privileged that he actually believed that the force he used was reasonable and that it was, objectively speaking, reasonable under the circumstances. The district judge did not make a finding as to the officer's actual belief. Did you preserve that issue? Did you raise that issue in the trial court? So there's two aspects of it. The one aspect is the officer's actual belief, and the other is the reasonableness of it under the District of Columbia privilege. And I wonder if we review that for, deferentially, or is that in the case as far as you're concerned? You know, I believe there was no finding by the judge as to what the officer believed. I believe the cost analysis went straight to what an objective officer... But the question is, did you raise that issue about subjective belief as opposed to the objective part? You know, I will have to review the record to be able to... In the conclusions of law, you say that a police officer has a qualified privilege, provided that the means employed are not in excess of those which the actor reasonably believes to be necessary. So there has to be a belief, an actual belief, as well as that a person in that position would believe. And that's in the first paragraph of your conclusions of law. So that's a part that we don't have a finding from Judge Kaye on that. That's correct, Your Honor. And did you raise that on appeal? I don't remember seeing that argument in your appellate brief. Your Honor, I believe we raised the issue with respect to that cost analysis. Let me ask you, maybe, unless you have it right at your fingertips, and it's something you want to save for rebuttal, but there's also a question that I'd be interested in your views about, whose burden is it under District of Columbia law to establish the privilege? Is it the plaintiff's burden to say that the conduct is unprivileged, or is it the district's burden or the officer's burden to show that there's a privilege? You know, I believe it is the officer's burden to show that there was privilege. I'm sorry, I didn't catch that. You know, I believe it was the officer's burden to show that the conduct was privileged because we presented the evidence as to the excessiveness of the use of force. Do you have a case for that? Because I looked at the D.C. cases, and I thought that the D.C. had declined to answer that question of who has the burden. You know, that's why it's our position, because our burden is to show that the force used was excessive. We've presented that position. If it is the defender's position that it was privileged, they're supposed to proffer some evidence to support that privilege. But we've established that the force used was excessive. It was so excessive that even the judge, in his sentence, commented about the injuries to Ms. Pamela Taylor, and even hinted that a less authoritative means could have been used, but he would not do it through the 20-20 vision. But in this case, there's no need for a 20-20 vision. Even though the argument surrounds that Ms. Taylor was unable to be restrained, but the facts don't support it. The facts show that Ms. Taylor could have been restrained. All she was doing was talking. He had her hand on two occasions and did not restrain her. And it's important for the court to know that the first time Mr. Clark said that he would put her to the ground was when she refused to stop talking. And that was when he said, if you don't stop talking, I will put you to the ground. So the purpose of putting her to the ground wasn't to restrain her. There was no dangerous condition on that day. The officer made, I mean, the court or the prior court made statements about the cell block being a dangerous place. But on that day, what Officer Clark was confronting was three female inmates, a normal day at the cell block. There was no heightened security, like in World Law or in Scott. There was nothing happening when Officer Clark confronted Ms. Taylor, apart from her talking in the cell block and refused to stop. On that basis... Well, and that she hit him with, in the, she attempted to hit him in the eye, but she hit his glasses. And that he perceived that she wanted to fight. Those are the findings of fact. You know, that may be the final debate. I believe it's inconsistent with the testimony. For example, if Ms. Taylor assaulted or battered Officer Clark, more than likely she would have been charged with assaulting an officer. Every person that testified, even Officer Kent, may declare that she saw Ms. Taylor talking with her hands all over the place. Any touching of Officer Clark was not intentional. It may be the final trial, but it's inconsistent with the testimony that was presented. Ms., I mean, Officer Clark did not specifically state, Ms. Taylor assaulted me. Ms. Taylor hit me. It was her intention to hit me. Believing that Ms. Penelope Taylor was trying to get into a fight is inconsistent with the events that were described. The only thing that she was saying is that you're not going to put me to the ground. Was it enough under the test to say that she was trying to hit me? Or does he actually have to show that he felt threatened by this, at some level, that he felt it was necessary to respond with the force that he did? Yes, he was supposed to show that he was threatened and he was in fear of Ms. Taylor that made her to use the force that she used. But the testimony appeared that she was trying to restrain Ms. Taylor, which is inconsistent with his own testimony in the record that Ms. Taylor refused to stop talking and he put her to the ground. And how do we review the district court's determination that the use of force was reasonable, what a reasonable officer would have, that a reasonable officer could have used this technique? How do we review that? Is that something we review de novo? Is that something we review for clear? Or is that a factual or a legal determination, the reasonableness of it, the objective reasonableness of the conduct? The objective reasonableness of it will be reviewed, is a position that the court should review de novo. For the simple fact that the only testimony regarding the leg sweep was, is non-lethal. It was taught to us in the academy. For the court to infer because it was taught in the academy, then it can be used on a 100-pound female without putting into consideration the kind of damage. So that's why the question about the standard review, it sounds like what your position is, you can't just say in the abstract this is an objectively reasonable technique to use for some sort of abstract attack. What the district court had to do here was to say that it was reasonable in the face of this attack with these facts given the size disparity and those types of things. Yes. Thank you. Okay. Good morning, your honors, and may it please the court. My name is Wynn Kelly on behalf of the United States of America. I'd like to turn briefly to questions raised by the panel on Officer Clark's subjective beliefs and his interaction with Ms. Taylor. There is direct testimony in Joint Appendix 164 and 165 where Officer Clark describes both his fear of Ms. Taylor and the specific reasons for it. One thing that Ms. Taylor's counsel pointed to before the court today is that there was a size disparity. Officer Clark actually says that informed his fear that this was a person who had been stepped back. She had very little to lose. She was refusing to be restrained, and she had struck at him, and therefore he thought she wanted to fight. As the district court found, this was reasonable. This is a place, the superior court cell block, where inmates fight each other and law enforcement every single day. This was not an unusual occurrence. So if the question is, is there a factual foundation for the legal conclusion that it was reasonable to respond, that's one thing. If the question is, was there a factual foundation as to which it was reasonable to respond in this way, that seems like another question. And as has been pointed out this morning, the question is whether objectively and subjectively it was thought necessary to use this type of force. And as to that, what's the best testimony that it was necessary to use this type of force? Well, so, Your Honor, I think this court must rely on the district court's findings absent clear error, which Appellant has not shown clear error. Appellant has pointed to no clear error in any of the district court's findings. But even as to the district court's findings, the district court has a factual predicate findings, and then as to the question of necessity, there's a conclusion. And I'm just wondering, what's the evidence that shows that this maneuver, this particular maneuver, which resulted in injury, was necessary? Correct, Your Honor. So the district court's findings at Joint Appendix 311, paragraph 31, that's the finding that Officer Clark felt that Ms. Taylor wanted to fight. Two paragraphs prior is the finding about hitting the glasses, as Your Honor stated in colloquy with Ms. Taylor's counsel. That informs the subjective prong that Officer Clark himself believed that force was necessary. So you're right that force – I mean, I'm not going to dispute for purposes of this exchange that force was necessary. But I think there's a further question, which is whether this type of force was necessary, because there's a gradation of responses that an officer can undertake. And the question is – and I think under the D.C. standards, the question is whether this type of force was necessary. And what's the testimony, or if there's a factual finding about it, that goes to that question, whether this kind of leg-sweep maneuver was necessary given the factual circumstances that were found by the district court? Two points to that, Your Honor. There's testimony about the inherent dangers of the cell block, and so the need for force. And so that informs the need to quickly gain control of an inmate who is not allowing herself to be placed under control. And then the district court's findings as well, that this is an Academy-approved technique that is taught at the Federal Law Enforcement Training Center. There's testimony also in the record that Officer Clark on that day did not have a taser. He did not have a baton. Whether those instruments would have been more or less harmful to plaintiff, we don't know. Is there anything – I'm sorry, go ahead. Just to finish this up, he says at 165, I elected to use that maneuver, that was at the bottom of the page, because it was the – I didn't have a taser or a baton at the time, so I had to use my hands. That technique was one which I could get – in which I could get her on the ground so that I could control her hands, but I also could keep myself mobile because I still had other prisoners who were near me. So that explains why you would use that technique. No taser or baton was available. It starts to get there. But then there's testimony about other techniques that are use of hands. He said I had to use his hands. Is there other techniques that are use of hands that weren't used, pressure points and things of that nature? And that's the question because those wouldn't have involved swiftly putting somebody on the ground in a way that could occasion this kind of injury. That's correct, Your Honor. There is testimony that there are potential other techniques. I believe the Supreme Court has instructed and this Court has followed that courts should be reluctant to engage in 50-50 hindsight of law enforcement officers when they're engaged in these split-second interactions. However, the testimony also showed that those techniques – I believe it was Deputy U.S. Marshal Kent who was asked about pressure points and the use of elbows. She's not an expert witness. She was asked about techniques she knew. She said they could have been more or less likely to injure Ms. Taylor. But in forming the technique, there was a specific finding by the district court that Ms. Taylor was unable to catch her fall. The technique used allows for the detainee or inmate's hand to be free, hopefully, so that he or she catches him or herself. That didn't happen. Is there any finding other than what you specifically identified to us that the officer actually believed that this was the force that was no more than necessary? As far as a finding by the district court, Your Honor? Yeah, or something along those lines that you would rely on for that point. There's no specific finding by the district court beyond Joint Appendix 311, Paragraph 31. Joint Appendix 311, Paragraph 29. There's certainly testimony that supports that finding, and since neither of those – This finding. Correct, Your Honor, those two findings. Since neither of those findings has been demonstrated to be clearly erroneous, those inform the conclusion and the inference that Officer Clark subjectively felt he was in peril. What about the – I'm on Appendix 317, the very bottom. The district court – I'm worried about the legal test. The district court finds that alternative nonlethal maneuvers exist that may have resulted in no or less substantial injuries to plaintiff. But he doesn't say that it was reasonable. He says, I cannot say it was unreasonable to do this one. Now, that's not the finding he's supposed to make, or she – he – he is supposed to make. Cannot say it was unreasonable, even though there were other things that would have resulted in less of an injury. How is that an accurate statement and application of the law for the privilege here? Two responses, Your Honor. I think this is borderline dicta informing the legal conclusion that the court makes. It is separate from the express findings of fact that the court makes in the pages prior. Well, this is – this is the – he makes – finds facts and then applies the law to those facts. I don't think that counts as dicta. This is the determination. But this is not an express finding of fact that the court makes. Right. What is your position on whose burden it is to show that the conduct was privileged? As Judge Srinivasan stated, the District of Columbia Court of Appeals has punted on this issue several times, as well as whether expert testimony is required. The one holding that the District Court – District of Columbia Court of Appeals, excuse me, has made is it seems under that if the government comes forward with an expert on excessive force, then the plaintiff is required to answer. But as far as who has the burden, there's – it's silent. The record here – Go ahead. I'm sorry. I apologize. The record here would support either burden. So as I read it, what the District of Columbia has done, courts have done, is say, assuming that the burden is on the government, in prior cases the court thought it was the government had met the burden, so they were just going to act as if it was the government's burden until they were given a case where that would make a difference. So it's your view that even assuming, you know, under that standard, assuming the burden is on the government in this case, it's your position that you believe it's not, that the government has adequately shown the privilege? Yes, Your Honor. While not conceding that we have the burden – Just provisionally that if we follow what the D.C. Court of Appeals has done and say, you know, we're not saying that this is right, but until we decide otherwise, we're going to functionally operate with it on the government. Correct, Your Honor. The findings, facts, and conclusions of law support, as the District of Columbia Court of Appeals has instructed, whoever has the burden, the – But you don't mean the conclusions of law in this case? Because as I read the conclusions of law in this case on page 318, there's a paragraph where the District Court says, in light of the fact the undersigned counsel cannot – undersigned, sorry – cannot say that Officer Clark's use of force was so excessive that no reasonable officer could have believed in the lawfulness of his actions, plaintiff has not met her burden in this case. So it seems like what the District Court did was put the burden on plaintiff to show the – with respect to the privilege. Well, I believe what the court was saying was plaintiff has not met her burden of proof for battery writ large, and then there's an issue within that on whether the force was excessive. But I believe that could be open to interpretation. But as the District of Columbia Court of Appeals has said, it is possible too that there could be a shifting burden back and forth in that the government comes forward with evidence that the force used was both subjectively and objectively reasonable, and then the plaintiff has the burden to show that it was excessive. So that could be what the District Court meant here is that the plaintiff has not sort of pushed the ball back over the line after the government showed that the force was reasonable under the circumstances and therefore privileged. But the government – the government didn't introduce expert testimony on this, right? So when you're saying the government made its showing on this, what are you referring to? The government produced evidence that the force was privileged based upon the testimony. Under Etheridge, we're not – the government is not required to provide expert testimony, but there – obviously there was a battery. We – the government is required to assert the law enforcement privilege. The government did so. The government provided sufficient evidence to support that privilege, and the plaintiff was unable to overcome. And when you say it's provided evidence to support that privilege, you mean provided evidence to show that this degree of force was necessary. Correct. This degree of force was – Under these circumstances. Correct. Can I ask you about the test? Because the – this determination, I cannot say that it was so excessive that no reasonable officer could have believed in lawfulness. Is that the D.C. immunity test, or are they quoting a constitutional qualified immunity test there? I don't see that language in the D.C. articulation. Cannot say, as opposed to affirmatively finding objective and subjective reasonableness. And Your Honor has pointed to the tricky part of this area in that the excessive force analysis in the common law tort of battery cases seems to pick and choose and borrow from the constitutional excessive force cases under the Fourth Amendment and under Section 1983 cases that I believe the district court's conclusion there might have been informed by there is language. I was asking, does that apply in the right legal test under D.C. law, as you understand it? It's a – it might be a paraphrasing of language that states that no reasonable officer would have believed the force he used was excessive, which is in the District of Columbia Court of Appeals, which is the same as a reasonable officer. It's a slightly different phrasing of the same test. Well, it's – although it's not. I mean, this is – and I can understand why there was some confusion on the Magistrate Judge Kaye's part because there is some precedent that cites the Fourth Amendment cases and the D.C. cases in a kind of braid. But there is a really quite significant distinction in that the D.C. cases do and the federal constitutional cases do not require a determination of the officer's reasonable under the circumstances. And you don't disagree with that. That scales and – I'm sorry, Your Honor. We don't – the government does not disagree that, yes, the officer's subjective belief is required for the privilege in the battery. That is correct. Yes. And it is the government's burden, at least provisionally, or you're willing to shoulder that burden in this case because you think you can, to establish that actual belief in the reasonableness of the force used. Your Honor, I see my time has expired. No, you can go ahead. First, I do not have the authority to bind the United States government to accepting the burden either way. What I was saying is based upon the District of Columbia Court of Appeals instruction that it is unclear of who has the burden that, based on that landscape, the evidence, the findings of fact here show that we provide – the government provided sufficient evidence to assert the privilege. Whatever the burden is, the government has met it and, in this case, has carried it. Now, just by hypothesis, and obviously we haven't decided this case yet, but if we were to disagree with you that the evidence is sufficient, and D.C. has said this is an open question under its law, if this was the case in which it did make a difference whose burden it was, what course for this Court as a procedural matter? If that were to occur, then perhaps this Court could send it to the District of Columbia Court of Appeals for resolution of that issue if it was necessary. Based upon the findings of fact in this case and the conclusions drawn, it does not appear necessary. We don't have to do that. I mean, there's times when federal courts have to just make their best guess as to how state courts would resolve an open legal question, right? We don't have to certify it. We can make our best guess, our best educated determination. That is correct, Your Honor. However, the District of Columbia Court of Appeals has had the issue before it specifically and has declined to address it. Did the testimony of the officer ever say, when he explained, I did this leg sweep, it would let me get her under control and keep myself in a position of mobility given the other prisoners there. Did the officer ever say that no other technique that was available to me at the time would have sufficed? Your Honor, he did not say that. If I may give sort of a longer answer, during Officer Clark's testimony, he demonstrated to the court the specific interaction that was occurring at that time. The officer's hands are occupied by the waist chain and the handcuffs. He is required, he must have a compliant inmate to be able to restrain her because his hands are otherwise occupied. When she refused to comply and then struck at him, he was forced to take quick action. A technique he could have used, and so that was one thing that informed our prior colloquy about pressure points or use of an elbow. Those really weren't available at that moment because his hands were occupied. He had to immediately drop the waist restraint and the handcuffs, as he demonstrated to the district court, and then quickly gain control of the inmate as quickly as possible. So that might be right. That might well be right. But if there's not testimony to that effect, then how do we know that once he drops what he has in his hands, he can't use one of those other techniques because then his hands are available to him? His testimony was I needed to gain control of her hands as quickly as possible because I was afraid. If the district court or this court begins to engage in a 20-20 hindsight analysis of what potential other techniques were possibly available and what the effects might be, that would seem contrary to the Supreme Court's instructions. Sir, 20-20 are the legal tests, the legal tests that we have to find that the officer thought this was the force necessary. If the officer says and explains why the officer thought that force was necessary, then I get that we as judges can go, well, you know, I don't know. Maybe you could have done this, that, or the other. But that would be 20-20 hindsight by folks. At least I have no experience in handling people in a jail cell holding area. But just requiring the officer to explain that the officer made that judgment, is that 20-20 hindsight or is that just the legal test we have to apply? Well, the officer did testify that he used the minimal force necessary. That was not a finding. Where did he say that? He definitely testified that the force was sufficient, and I think the question is... No question it was sufficient. Where is it that it says that it's necessary, that that degree of force is necessary? If I could have one minute. I may have overstated the testimony. I apologize. On Joint Appendix 164, he said, I put my right leg in front of her leg and I did a leg sweep using the minimum amount of force. That was one of my techniques. That was what I was referring to. So I may have overstated the import of that testimony. Which I take it means that using the minimum amount of force to execute a leg sweep. Correct. Yeah. I had the impression, and again, I'm no expert and we don't have expert testimony, but it just, it raises a difficulty for us in the posture that this case comes to us. I had the impression that a leg sweep was typically the other way. That someone, you would basically put someone's feet out in front of them so they would sit. And here it was done so that she fell face forward. And we don't know, do we, that this is actually the correctly executed technique. Even assuming that this technique, as opposed to some other, was the minimum force sufficient in the circumstances to get her under control. Or do we? Well, Your Honor, I believe that would be a factual issue. Yes, absolutely. The leg sweep, as was described and testified about and actually demonstrated on cross-examination for the district court, it was more of a leg trip in that the officer placed his leg in front of the plaintiff's leg and grabbed her wrist using his leg to trip her. As I stated earlier, her hand was free. The technique calls for that, hopefully, to catch herself, as the district court found. That did not occur. There's no testimony in the record that it was improperly executed or that there was anything wrong with the way the maneuver was executed. There's not any testimony, even lay testimony, that was properly executed either. This is what I learned. This is the circumstance in which I've used it. And this is why it makes sense. Not even lay testimony to that effect, right, in this case. Well, Your Honor, there is testimony by Officer Clark that this is a maneuver that I learned at the academy. This is what I used at this point. I used the minimal force necessary when using this maneuver. And, again, he did demonstrate it for the district court, and the district court found, okay, that you subjectively believed you were in danger. This was reasonable because you work in a very dangerous courthouse area where there are people like Ms. Taylor, whose liberty has been suddenly taken away. If you chart the course of her day, her behavior began to escalate in a bizarre fashion. I just want to go back. I thought part of the technique was the expectation that they would have at least one hand free to catch themselves with. That's correct, Your Honor. Okay, well, then it has to be forward going because if you throw them backwards, their hand isn't going to catch them. So it would have to be, the proper technique would have to be forward going for the hand to even be relevant. Correct. I believe that it's more an issue of nomenclature in that, like I said, it is less of a leg sweep and more of a controlled trip, at least as demonstrated and as testified about. The detainee's legs were not swept from underneath her. She was forced forward over the law enforcement officer's knee. Does that answer Your Honor's question? If there are no other questions, the government would ask that the district court's judgment be affirmed. Thank you, counsel. We'll give you two minutes back for a vote. Your Honor, on the issue of trying to hold Ms. Pamela's hand in order to control her, the officer was holding her hand. The leg trip was unnecessary. It was unnecessary because the nature of the tactics as described by Officer Clark was to hold the hand, twist it to the back, and push her forward while using the leg to trip her. Remember, it's important that she was in a leg trap. So does that mean that any time an officer gets hit, that what an officer has to do is just hold somebody's hand? No. There have to be occasions in which an officer is entitled to put somebody on the ground. But the officer's testimony, Officer Clark's was that he was trying to get control of her hand. So in trying to do that, what you need to do is to push her with great force. Trying to, like, for the judge to find that or to conclude that Ms. Taylor was unable to break her fall is inconsistent with the facts or with the testimony of Ms. Taylor. Well, that's a very difficult question for us on this record. I mean, I thought that it was actually quite plausible what the officer said, that when somebody that small is acting really irrationally in being aggressive toward an officer, you start to think, well, speaking and behaving in a, you know, treating her that she's going to respond to minimal force is more risky. She seems, you know, for want of a better word, a little uncontrollable or crazed. And it is scarier to confront a person in that situation. There is a need for a somewhat more assertive response. And that just, to the extent that that's what the district judge found, then it's clearly erroneous. You know, from the facts of what transpired that day, from the time she came into the cell block, she's been shackled previously twice. She did not fight anybody. She did not get into a fight. All she was doing, you know, there was talk. There was no evidence or there was no testimony of her being confrontational. And it's important to note that the first time Officer Clark spoke to her was when Officer Clark was not even attending to her. It was when Officer Clark said, stop talking, shut up. And she said, no, you're not going to, I'm not going to shut up. So based on what was known to the officer, the officer could not have expected that there would be a fight. A reasonable and objective officer, knowing what we know about Miss Pamela Taylor and her side, would not have anticipated that Miss Taylor wanted a fight. And there are three other women, all of whom have handcuffs and leg shackles on. There's a man who's not in the same area, but through bar or through mesh. He was maybe far away about some yards away. But is he free to move at them if he were to be so? Is he separated by some kind of barrier? I believe so, because I believe that I don't know for a fact, but from the testimony, it appears that he was at a different location that they were only able to communicate, but not to physically be in the same space. And Officer Kent was another officer available in the area where Officer Clark was. Yes, he was another officer that was, according to the testimony, six feet away. And Officer Kent had free hands, presumably, to help if needed. Yes, Your Honor. And weapons, if needed? She was said, I mean, Miss Taylor was said several times, stripped, said there was no weapon on her, which would have been known to Officer Clark because he was present at the scene. And if there was any confrontation, Officer Kent would have come to the aid of Officer Clark. But Officer Kent was sitting down, watching, what was that? According to her testimony, she did not observe when, or her report, she did not observe when Miss Pamela Taylor hit the ground or what happened. But at trial, she testified separately about seeing Officer Clark putting handcuffs on Miss Taylor. But in her report, there was nothing in there about seeing the event that happened because she was blocked. Her vision was blocked from where she was sitting. At trial, she said that she stood up and observed Officer Clark putting handcuffs on Miss Taylor. But when a handcuff... You said that Officer Clark should have been aware that Miss Taylor had been strip searched. But as I read the testimony, he was not. There wasn't testimony that he was aware. That was performed by someone else? Yes. Is there testimony that he was aware of that? No, there's no testimony, there's no finding. If he was unaware of what transpired all day, there was no reason from the point in Paragraph 24 of the decision, of the finding of facts, the judge found that the first contact with Miss Taylor was when he told her to shut up. If that was the first encounter, there's nothing that would have made Officer Clark believe that the condition was dangerous, the cell block was dangerous, or that Miss Taylor was dangerous in any way. Okay. Thank you, Counsel. The case is submitted.
judges: Srinivasan, Millett, Pillard